Mark Mausert
NV Bar No. 2398
Sean McDowell
NV Bar No. 15962
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
sean@markmausertlaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM O'DONOHUE, JANE FISHER & LORRAINE BENUTO,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF NEVADA *ex rel.* BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, ON BEHALF OF THE UNIVERSITY OF NEVADA RENO,<br><br>Defendants. | Case No.: 3:25-cv-00014-MMD-CLB<br><br>**JOINT CASE MANAGEMENT REPORT** |

All parties hereby submit their Joint Case Management Report.

**1. A short statement of the nature of the case (three pages or less), including a description of each claim or defense.**

**Plaintiffs' View:**

Two of the Plaintiffs have been employed by the Defendant State/UNR for over two decades, and one for approximately 14 years. Each holds a doctoral degree in psychology. They have been employed in various roles, including teaching, research, and mentoring graduate

JOINT CASE MANAGEMENT REPORT - 1

students. UNR has consistently portrayed itself as an equal opportunity employer and educational institution, preventing discrimination and investigating complaints. The Plaintiffs relied on UNR's promises regarding sexual and racial discrimination. UNR knowingly failed to respond to Title IX complaints, train employees, create reporting channels, allow racist hate speech, and accommodate cultural and language differences. The Plaintiffs opposed discriminatory conduct and policies, directed at Dr. Benuto and students.

      The Plaintiffs have opposed various actions and statements that they perceive as discrimination or harassment, including race-based allegations of plagiarism, negative statements about Dr. Benuto's suitability for tenure, audits, and investigations, and complaints with the American Psychological Association. They have also opposed UNR's failure to adhere to accreditation requirements to protect minority students, and investigations directed at themselves.

      The Plaintiffs have experienced sexual hostility and/or retaliatory hostility from male UNR employees, such as Chair Michael Crognale, who has been accused of gender-based prejudice. Chair Crognale has made statements about his martial artist prowess, which lent themselves to intimidation. The Plaintiffs have been aware of Chair Crognale's hostile demeanor and open displays of anger towards them, and they have been aware of the policies prohibiting carrying dangerous weapons on UNR premises.

      The Plaintiffs have been subjected to discrimination and harassment at UNR, including sexual harassment, etc. UNR has been accused of discriminatory and disparate treatment towards its employees, including Dr. Benuto, who became a UNR Professor in 2016. The allegations include a continuous course of actionable conduct, motivated by gender and national origin animus/racial animus, and retaliatory hostility. UNR has been equitably estopped for not

adequately investigating the content of the 2023 External Review Report and failing to implement remedial or preventive actions. The sex-based and race-based course of actionable hostility has been punctuated by incidents of retaliation, which increased the intensity of the hostility. The intensity of the actionable work environments has been further intensified by hostility manifested by other highly placed UNR officials, including Dr. Paul Kwon, Provost Jeff Thompson, and former Dean Katherine McCall. Faculty member Mariann Weierich has also manifested hostility towards minority students, who have been offended based on race and have subsequently experienced additional and intensified hostility, actionable per Title VII.

      O'Donohue has experienced various forms of hostility due to the Defendant's actions, including being denied input into Program decisions and facing retaliatory hostility. The intensity of the work environment has been intensified by Defendant UNR's facilitation and toleration of Title VII hostility directed at Plaintiffs. The Defendant has also been involved in the decision to award a Program Fellowship to ethnic minority students, which violated its commitment to minority students. The Plaintiffs became aware of race-based complaints by Program graduate students they mentored and had close, collegial relations with. Chair Crognale's consistent refusal to investigate and redress complaints of race-based and sex-based forms of discrimination has led to retaliatory hostility at complainants, including Plaintiffs. Dr. Benuto has endured race and/or sex-based hostility since 2016, including inferior lab space, inferior pay, refusal to hire a spouse, disparaging remarks, withholding acknowledgment of grants and accomplishments, failure to introduce Dr. Benuto to new department faculty members, failure to properly evaluate her performance, and manifesting an overtly belligerent demeanor toward Dr. Benuto.

The Plaintiffs allege that Chair Crognale discriminated against them and other employees, students, and themselves. They have engaged in various forms of opposition to the discriminatory conduct, including communication with Dean Moddelmog, addressing minority graduate students, and filing complaints with the Defendant's Title IX Office. The Defendant's discriminatory conduct was motivated by the Plaintiffs' opposition, marital relationship, gender, and genetic racial makeup. The Defendant's refusal in responding to complaints, inadequate investigations, deliberately contrived to be inadequate, and lack of remedial action contributed to the intensity of the hostility they suffered. Chair Crognale's animus towards the Plaintiffs was evident throughout his tenure, but he failed to recuse himself from decisions directly involving them. The presence of Chair Crognale in the Plaintiffs' work environments led to an actionable, hostile Title VII work environment, causing fear and apprehension of violence. The Plaintiffs have experienced emotional distress as a result of knowing each other had been subjected to harassment and retaliation, which is actionable under Title VII.

Plaintiffs have been experiencing fear, apprehension, and emotional distress due to the presence of Chair Crognale, who has been displaying intense anger towards Dr. Benuto and other female faculty members. This fear has led to Dr. Fisher reducing her participation in faculty meetings and limiting her involvement in the Psychology Department. The Plaintiffs have also communicated about various forms of discrimination and harassment, with the Plaintiffs becoming aware of UNR's toleration of such statements and actions. UNR has consistently failed to investigate complaints of discrimination directed at the Plaintiffs and a number of psychology students, particularly female and racial minority students. As a result, the Program was placed under Temporary Administrative Governance (TAG) in October 2020, which continues to be in

force. The decision-makers responsible for placing the Program in TAG were motivated by sexually and racially-based animus, which has had adverse effects on the Plaintiffs.

**Defendant's View:**

Plaintiffs bring 13 causes of action that fall into the following categories: (a) hostile work environment under Title VII, (b) retaliation under Title VII, (c) failure to investigate incidents of discrimination under Title VII, and (d) FMLA interference. Although Defendant ("UNR") has not submitted an answer to the Complaint yet, its Motion to Dismiss [ECF No. 9] shows that the Complaint fails to state any viable causes of action as a matter of law for at least three reasons:

**(1) Failure to Exhaust.** Plaintiffs have not exhausted their administrative remedies. To satisfy this prerequisite, the Ninth Circuit holds that the claims in a Title VII lawsuit must either have been *factually alleged* in the administrative charge or reasonably related to the *factual allegations* in the charge. Plaintiffs rely on the near-identical Charges of Discrimination they each filed together with the Nevada Equal Rights Commission ("NERC") in August 2024, the longest of which contains a 333-word description of the Plaintiffs' claims. Each charge appears to allege retaliation claim based on the discrimination that the Plaintiffs allegedly witnessed *against others* and is almost completely bereft of any factual detail, particularly concerning the alleged retaliatory acts the Plaintiffs suffered. In that regard, each of the three Plaintiffs alleges he or she was "subjected to disparaging remarks . . . based on my gender" without elaboration. Both Benuto and Plaintiff William O'Donohue vaguely claim that they were subjected to excessive scrutiny of their work performance in the form of "audits." And Benuto alleges that such scrutiny also included "investigations." All three charges identify the discrimination as having occurred between late September 2022 and early October 2023.

The vast majority of the claims in Plaintiffs' 26,085-word Complaint—which covers events from 2016 to 2025—are wholly unrelated to the sparse facts alleged in their NERC charges. Those NERC charges do not allege a hostile workplace or any supporting facts, which represent Plaintiffs' 1st, 2nd, and 3rd Causes of Action. Nor do Benuto or O'Donohue allege any facts in their charges concerning the investigations alleged in their 5th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th Causes of Action, most of which occurred *after* they submitted their charges. And O'Donohue's claim that UNR asked him to teach a class he claims to be unqualified to teach occurred just a few weeks ago and thus has no relation to his NERC charge months prior. Accordingly, when analyzing the legal feasibility of these causes of action, the Court need not go further than Plaintiffs' failure to exhaust the aforementioned causes of action.

Finally, while it would not save them from the deficiencies above, the Complaint admits that Plaintiffs Benuto and Jane Fisher have not yet received right-to-sue letters from the Equal Employment Opportunity Commission. Their claims are thus unripe for adjudication.

**(2) Failure to Plead Protected Activity and Causation.** Plaintiffs' 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Causes of Action are all based in Title VII retaliation, which requires a plaintiff to plead that (1) they engaged in a protected activity, (2) they suffered a materially adverse employment action, and, critically, (3) there is a causal link between the first two events. While UNR does not dispute that Plaintiffs engaged in some protected activities, Plaintiffs often fail to allege legally recognized adverse employment actions and consistently fail to allege facts showing a causal link between the two. Rather, Plaintiffs seemingly leave it to UNR and the Court to guess as what protected activity allegedly caused UNR to retaliate through a particular employment action without direct evidence, temporal proximity, or other circumstantial facts that from which one could reasonably infer causation.

**(3) Legally moribund claims.** Several of Plaintiffs' claims also fail because they plead legal theories widely rejected by courts. First, the 6th, 7th, 8th, 9th, and 10th Causes of Action all plead that UNR retaliated against Plaintiffs by conducting inadequate internal investigations concerning Plaintiffs' own claims. Putting aside the fact that the Plaintiffs never notified UNR of their claims with NERC or the EEOC, never asked UNR to investigate those claims, and then refused to participate in UNR's investigation of their own claims, Ninth Circuit case law holds that the adequacy and manner of an employer's investigations into plaintiffs' claims do not constitute a materially adverse employment action. Second, Plaintiffs' lack standing to raise claims on behalf of non-parties in their 6th and 12th Causes of Action. Third, Benuto's 13th Cause of Action turns FMLA law on its head, attempting to hold UNR liable for *giving her FMLA protection* for the birth of her child, as opposed to withholding such protection.

**2. The jurisdictional basis for the case, citing specific jurisdictional statutes.**

Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e. Subject matter jurisdiction exists per 28 U.S.C. 1343. Plaintiffs are members of a protected class, i.e., depending on their gender, race, etc., and were subjected to a hostile work environment (and several to retaliation) "because of sex/race" and/or because they opposed hostile sexuality/racial harassment.

**3. Whether any party expects to add additional parties to the case or otherwise amend the pleadings.**

<u>**Plaintiffs' View:**</u>

Currently, the Plaintiffs do not expect to add additional parties to this case. This is subject to change as the case progresses.

**Defendant's View:**

UNR does not currently anticipate requesting the addition of new parties to the case.**4. Whether there are any pending motions, including a brief description of those motions.**

Currently, there is a pending Motion to Dismiss filed by Defendants on January 31, 2025 [ECF No. 9] and a pending Motion to Stay Discovery filed by Defendants on February 25, 2025 [ECF No. 25]. Both motions have been fully briefed and are awaiting decisions by the Judge.

**5. Whether this case is related to any other case pending before this court or any other court, including a bankruptcy court, and if so, provide a brief description of the status of those case(s).**

N/A.

**6. A complete and detailed statement related to discovery, which addresses the following issues:**

**a) The date the Rule 26(f) initial disclosures were provided, or will be provided, by each party;**

Plaintiffs provided their Initial Disclosures and a computation of damages to opposing counsel on March 13, 2025, pursuant to FRCP 26(a)(3). Defendant provided its initial disclosures to Plaintiffs on March 13, 2025, along with a 1st Supplement on March 19, 2025.

**b) A brief statement regarding, what discovery requests have been served by any party, who the requests were served upon, and the due dates for responses to those requests;**

No discovery requests have been exchanged to date. This is subject to change as the case progresses or if no settlement is reached at the upcoming Early Neutral Evaluation.

**c) Whether the parties anticipate the need for a protective order relating to the discovery of information relating to a trade secret or other confidential research, development, or commercial information;**

A Stipulated Protective Order was granted on March 10, 2025 [ECF No. 32].

**d) Any issues or proposals relating to the timing, sequencing, phasing or scheduling of discovery;**

JOINT CASE MANAGEMENT REPORT - 8

The parties do not anticipate any issues relating to the timing, sequencing, phasing or scheduling of discovery.

**e) Whether the parties anticipate the need to take discovery outside of the District of Nevada or the United States and, if so, a description of the proposed discovery; and,**

The parties do not anticipate the need to take discovery outside of the United States.

**f) A summary of the number of depositions each party anticipates taking, information related to the anticipated location of those depositions, and whether any party anticipates video and/or sound recording of depositions.**

**Plaintiffs' View:**

Plaintiffs anticipate taking 4-6 depositions at this time, more may be required pending discovery. Plaintiffs anticipate taking the depositions in Reno, NV.

**Defendant's View:**

UNR currently anticipates taking approximately ten depositions as the case is currently constituted, nearly all of which are likely to occur in Reno.

**7. A brief statement regarding the types of ESI expected in the case, where the ESI is located, a statement of any agreements reached by the parties related to ESI on the issues listed above, and any outstanding disagreements between the parties related to ESI.**

The parties do not, at this time, anticipate any issues regarding disclosures, discovery or preservation of electronically stored information ("ESI"), if any, including the form or forms in which it should be produced. The parties agree that ESI can be produced in paper form or as a readable image (e.g., .pdf or .tiff) file, while reserving the right to thereafter seek production of the ESI in native format if necessary and to the extent readable images are insufficient in establishing any claims or defenses. If a party later requests the ESI be produced in its native format and/or as a forensic copy, the parties agree to meet and confer to determine the parameters of the production and to produce according to the Federal Rules of Civil Procedure. The parties shall work in good

JOINT CASE MANAGEMENT REPORT - 9

faith with respect to the production of ESI, and meet and confer should any dispute arise.

**8. Unless the Court has already approved a discovery plan and scheduling order, the proposed dates for each of the following:**

See approved Discovery Plan and Scheduling Order dated March 4, 2025 [ECF No. 28].

**9. Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, set forth reasons), and an estimated length for trial.**

A jury trial has been requested by the Plaintiffs. The request has not been contested. Plaintiff anticipates a 5-day trial. UNR anticipates a 7- or 8-day trial as the case is currently constituted.

**10. A statement as to the possibility of settlement and when the parties desire a court sponsored settlement conference, i.e., before further discovery, after discovery, after dispositive motions, etc.**

At this time, the parties are not able to fully assess the prospects for settlement as not much discovery has been conducted. That being noted, both sides intend to engage in good faith negotiations at the upcoming Early Neutral Evaluation, currently scheduled for April 10, 2025.

**11. Whether the parties intend to proceed before the magistrate judge.**

The parties have not elected to proceed before the magistrate judge at this time.

**12. Whether either party requests bifurcation or phasing of trial or has any other suggestion for shortening or expediting discovery, pre−trial motions or trial.**

N/A.

**13. Whether either party requests that a case management conference be set in the case.**

Plaintiffs do not see the need for a case management conference at this time. UNR believes a case management conference may be helpful to determine the scope of discovery depending on the resolution of UNR's Motion to Stay Pending Motion to Dismiss [ECF No. 25] and Motion to Dismiss [ECF No. 9].

JOINT CASE MANAGEMENT REPORT - 10

| | |
|---|---|
| DATED this 27th day of March, 2025.<br>MARK MAUSERT LAW OFFICE | DATED this 27th day of March 2025.<br>UNIVERSITY OF NEVADA, RENO |
| By:  /s/ Mark Mausert<br>MARK MAUSERT<br>SEAN McDOWELL<br>729 Evans Avenue<br>Reno, Nevada 89512 | By:  /s/ Frank LaForge<br>FRANK Z. LAFORGE<br>SCOTT H. HUSBANDS<br>1664 N. Virginia Street/MS0550<br>Reno, Nevada 89557-0550 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |